**In re Richard/Carol NEWELL, Debtors.**

**C & H Electrical, Plaintiff,**

**v.**

**Richard Newell, et al., Defendants.**

**Bankruptcy No. 03–3462.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 7, 2005.

Ray G. Tallerday, Adrian, MI, for Plaintiff.

Edward L. Snyder, Holland, OH, for Debtors.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Deny Discharge. The Plaintiff's Complaint is brought pursuant to two separate statutory sections: (1) § 727(a)(2), fraudulently depriving the estate of assets; and (2) § 727(a)(4)(a), knowingly making a false oath or account. Upon review of the arguments presented by the Parties, and after having had the opportunity to consider the evidence presented in this case, including observing the demeanor of the witnesses, the Court finds that the bankruptcy discharge of the Defendant, Richard Newell, should be Denied.

A proceeding such as this to deny a debtor's discharge, is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority

to enter final orders and decisions. 28 U.S.C. §§ 157(b)(2)(J); 1334. Pursuant to this authority, and in accordance with Bankruptcy Rule 7052, the following will constitute this Court's findings of fact and conclusions of law. However, before beginning with the substance underlying this Court's decision, a procedural matter needs to be addressed. The instant complaint to deny discharge is brought against both Richard Newell and Carol Newell, as co-debtors in the underlying bankruptcy case. The evidence presented at the Trial, however, was confined solely to the conduct of the Defendant, Richard Newell; Ms. Newell was neither called as a witness nor present at the Trial. As such, with the focus of this case being placed entirely upon the Defendant, Richard Newell, the Complaint against Carol Newell, as a codefendant, will be Dismissed.

## DISCUSSION

In support of its position that the Defendant's discharge should be denied, the Plaintiff, as taken from its complaint, pointed this Court to the Defendant's failure to properly disclose the following transfers of property:

two vintage automobiles—a 1959 Chevrolet Corvette, and a 1964 Chevrolet Corvette;

furniture, primarily an antique table;

a 26–foot cabin cruiser boat;

a travel trailer; and

certain storage cabinets.

(Doc. No. 1).

■■■ One of the primary purposes of the Bankruptcy Code is to provide a debtor with a fresh-start. As such, the bankruptcy discharge lies at the heart of the bankruptcy process. In order to effectuate this policy, a bankruptcy discharge can only be denied for those reasons specified by law, and then only after affording the debtor a presumption in favor of discharge. *In re Ellingson,* 63 B.R. 271, 276 (Bankr.N.D.Iowa 1986). From a procedural standpoint therefore, it is the creditor who carriers the burden of proof to establish, by at least a preponderance of the evidence, that all the elements of the applicable provision denying the debtor's discharge are met. Fed.R.Bank.P. 4005; *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir.2000).

The Plaintiff's first cause of action to deny the Defendant's discharge is brought pursuant to 11 U.S.C. § 727(a)(2), paragraphs (A) and (B). Both these paragraphs operate in tandem to implement the bankruptcy policy that a debtor who acts with the intent to defraud the estate of potential assets, is not deserving of the benefits provided for by the federal discharge injunction set forth in 11 U.S.C. § 524.[1] In order, these sections provide:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition[.]

■■■ As this statutory language sets forth, the only distinguishing factor between these two exceptions to discharge is their operative time frame—with paragraph (A) looking to the debtor's disposi-

---

1. Criminal penalties are also provided. *See* 18 U.S.C. §§ 152, 153.

tion of his or her property on a prepetition basis, specifically within one year of the bankruptcy filing; while paragraph (B) looks to the debtor's postpetition disposition of property. Otherwise, the requirements of both paragraphs (A) or (B) of § 727(a)(2) are the same: the movant must establish that, (1) the debtor disposed of what would have been or what is estate property—whether by transfer, concealment or other means—and (2) through the act of disposing of the property, the debtor possessed the subjective intent to hinder, delay or defraud an entity with an interest in such property. *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir. 1994); *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 732 (9th Cir. BAP 1999). For this purpose, a creditor has an interest in a debtor's property so as to confer standing to bring an action under § 727(a)(2) to deny discharge.

In line with this structure then, the petition date serves the function of the gatekeeper in any § 727(a)(2) analysis—here this date being July 30, 2003—as no matter a debtor's intent, transfers of property that occur more than one year prior to the filing of a debtor's bankruptcy petition do not fall within the purview of either paragraph (A) or (B) of § 727(a)(2). In applying this date to the evidence presented, the following two items of property, as set forth in the Plaintiff's complaint, are implicated in this matter:

(1) the boat, with the evidence showing that the Defendant sold this property on July 7, 2003, less than one month prior to filing for bankruptcy relief, thereby falling within paragraph (A)'s one-year prepetition window, (Pl.Ex. No. 6); and (2) the 1959 Corvette, with the evidence showing that as of September 26, 2003, the Defendant still held title to the vehicle, thus implicating the postpetition

prohibition of disposing of estate property as set forth in paragraph (B), (Pl.Ex. No. 6).

As to the other items of property, there is insufficient evidence before this Court to make a finding that either the Defendant still maintained possession of the property after filing for bankruptcy or that the Defendant disposed of the property within one year of filing for bankruptcy relief.

Turning next to the two elements both paragraphs (A) and (B) of § 727(a)(2) have in common—an estate interest in the property and fraudulent intent—there is no question that both the boat and the car otherwise qualify as estate property. 11 U.S.C. § 541(a) (property of the estate includes all legal and equitable interests of the debtor). Thus, as is commonly the focus in a matter brought under § 727(a)(2), the determinative issue in this case becomes one of intent.

For both paragraphs (A) & (B) of § 727(a)(2), the level of fraudulent intent required to deny a debtor's discharge is that of actual intent. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). This is a subjective standard as distinguished from constructive intent which, based solely upon the application of objective criteria, may arise by operation of law. *See Id.; Bank of Pennsylvania v. Adlman*, 541 F.2d 999, 1003 (2nd Cir.1976). Although actual intent is difficult to prove directly, it may be established indirectly through the use of circumstantial evidence. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701–02 (5th Cir.2003).

When applied to a prepetition transfer of property under § 727(a)(2)(A), circumstantial evidence may include, but is not limited to those badges of fraud normally applied when making a determination as to the existence of a fraudulent transfer. Common in this regard are the

following indicia: (1) a lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) the retention of possession for use and benefit; (4) the financial condition of the transferor before and after the transfer; (5) the cumulative effect of the transactions and course of conduct after the onset of financial difficulties or threat of suit; and (6) the general chronology and timing of events. *Ingersoll v. Kriseman (In re Ingersoll),* 124 B.R. 116, 121–22 (M.D.Fla.1991). Here, with regards to the Defendant's prepetition transfer of his boat, such indicia do not bend in his favor.

■ To start with, and as applied to the first of the above badges, the evidence presented shows that the Defendant, in the time leading up to his bankruptcy, placed an ad to sell his boat, asking $7,500.00. (Pl.Ex. 1). Thus, from an evidentiary standpoint, this Court must start with the assumption that the Defendant's asking price constituted, at least within reasonable percentage tolerances, the fair-market value of the boat. Yet, the boat was subsequently sold by the Defendant for just $500.00,—i.e., just over 5% of the original asking price—thereby placing the burden on the Defendant to justify the low amount of consideration received in the transfer. (Pl.Ex. No. 5).

On this burden, the Defendant ascribed the low sale price to a "bad motor." However, while possibly convincing in insolation, this justification lacks persuasive weight when it is considered that at least three other badges of fraud—specifically, the second, fourth and sixth—are present here: the Defendant did not sell the boat in an arm's length transaction; but rather sold the boat to his brother less than one month before filing for bankruptcy. Also, carrying this timing aspect a step further,

it can be safely assumed, given the close proximity with his bankruptcy filing, that at the time he sold the boat, the Defendant was insolvent. Against these indicia, no particularized explanation was offered in rebuttal.

On balance then, the cumulative weight of these indicia is sufficient to sustain a finding of fraudulent intent as applied to § 727(a)(2)(A). However, even if this were not the situation, one facet of this particular case tips the balance heavily on the side that the Defendant acted with the requisite fraudulent intent as applied to § 727(a)(2): the Defendant failed to disclose the transfer of the boat in his bankruptcy petition.

■ The integrity of the bankruptcy process requires that a debtor honestly, fully and accurately disclose that information which the law requires. Among other things, the law requires that a debtor, in their bankruptcy petition, disclose all present interests in property as well as transfers of property made by the debtor within the year immediately preceding the filing of the bankruptcy petition.[2] And as occurred here with respect to the boat, the failure to abide by this duty of disclosure is strong evidence that a debtor, with the requisite fraudulent intent, "concealed" property within the meaning of § 727(a)(2). *Groman v. Watman (In re Watman),* 301 F.3d 3, 9 (1st Cir.2002); *Superior Nat'l Bank v. Schroff (In re Schroff),* 156 B.R. 250 (Bankr.W.D.Mo. 1993); *Cobb v. Hadley (In re Hadley),* 70 B.R. 51, 53 (Bankr.D.Kan.1987). Nevertheless, honest mistakes can and do occur.

■ To distinguish between an honest mistake and a wrongful intent, two considerations are helpful: (1) the extent and the

---

2. For example, see question 7, entitled "Gifts," and question 10, entitled "Other transfers" on the statement of financial affairs that must be completed by the debtor. 1007(b)

degree of the misinformation; and (2) whether there existed a motive to provide the misinformation. *In re Pier,* 310 B.R. 347, 358 (Bankr.N.D.Ohio 2004). When set against the circumstances of this case, the existence of an honest mistake is simply not credible. In more detail, it stretches the imagination that in the month immediately preceding a bankruptcy filing, one would simply "forget" that they transferred to their brother a 26 foot boat. Additionally, considering that the transfer of the boat was to a brother, two strong motivating factors to conceal the transaction come to mind: the desire to retain a beneficial use of the boat; and/or a desire to protect a family member from having their ownership interest in the boat avoided by the bankruptcy trustee. *See* 11 U.S.C. § 548 (trustee's avoiding powers as it relates to fraudulent transfers). This same reasoning also carries over to the Defendant failing to disclose the postpetition transfer of his automobile.

At the time he filed for bankruptcy relief, the Defendant still held legal title to a 1959 Corvette; but like the boat, the Defendant failed to disclose the existence of this interest in his bankruptcy petition. To explain this lack of disclosure, the Defendant testified to the effect that the buyer was remiss in having the vehicle title changed so as to reflect the proper owner. Carried then to its logical conclusion, it is the Defendant's position that, in good faith, he did not believe he was the owner of the vehicle at the time he filed for bankruptcy.

Still, even if this were true, and the transfer of the vehicle occurred prepetition, the Defendant was still under a duty, as he was with the boat, to disclose the sale of the vehicle (unless, of course, the transfer occurred more than one year prior to the bankruptcy filing, but there is no convincing evidence that this was the case). No such disclosure, however, was made. And in a previous case, also involving a vintage Corvette, this Court noted the obvious: "there is virtually no possibility that the Defendants could have been unaware that they owned a 1963 Corvette ...." *Hunter v. Sowers (In re Sowers),* 229 B.R. 151, 157 (Bankr.N.D.Ohio 1998). Thus, regardless as to whether the sale of the transfer of the vehicle occurred prepetition or postpetition, the Defendant is placed in the virtually untenable position of having to explain why he simply forgot to disclose his interest in a vintage automobile. And, again like the boat, no viable justification was offered.

Consequently, for all these reasons, the only logical conclusion that can be drawn is that the Defendant, by failing to list the disposition of both his boat and his vehicle in his bankruptcy petition, sought to keep these transactions secret. Therefore, when set on top of those other indicia of fraud previously analyzed, the overwhelming weight of the evidence in this case supports a finding that, as applied to § 727(a)(2), the Defendant acted with the requisite intent to defraud. As such, he is not entitled to the benefits of a bankruptcy discharge. Moreover, those conclusions drawn from the Defendant's complete lack of candor in his bankruptcy petition also carry over to the second statutory ground raised by the Plaintiff to deny the Defendant's discharge.

██ In seeking to have the Defendant's discharge denied, the Plaintiff also cited to § 727(a)(4)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

Broken down, the necessary elements to maintain a successful action under this exception to discharge are: (1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent. *In re Sowers*, 229 B.R. at 158. In this matter, the existence of all these elements easily falls into place. Explained in order of enumeration: the signing of a bankruptcy petition constitutes a statement under oath; by omitting information from his bankruptcy petition, the Defendant made a false statement; and given the possible benefit the omitted assets may have had on his bankruptcy estate, the statement may be said to have "materially" related to the Defendant's bankruptcy case.[3]

■ With respect to the last two elements—which go to the culpable mental state of the debtor—the standard necessary to support a finding of knowingly making a false statement with the intent to defraud is, for all practicable purposes, identical to the standard required to support a finding of fraudulent intent under § 727(a)(2). *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95 (Bankr.N.D.Iowa 1998). As such, those findings and conclusions made with respect to § 727(a)(2) equally support a finding that the Defendant knowingly made a false statement while acting with the intent to defraud. Consequently, with all of its requirements being met, § 727(a)(4) also operates to deny the Defendant the benefits of a bankruptcy discharge.

■ A final point of observation. As an overall explanation for his failure to disclose his boat and Corvette, the Defendant allocated blame on his attorney. And, in limited situations, a debtor's reliance on the inaccurate advice of an attorney can, if taken in good faith, operate as a defense to those provisions of § 727(a) which, based upon a debtor's wrongful intent, operate so as to deny discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986). The weakness with this argument in this particular case, however, is twofold.

■ First, in the years in which he has practiced before this Court, nothing has caused this Court to question either the ability or the ethics of the Defendant's attorney. To the contrary, from this Court's perspective, the Defendant was well and competently represented in the instant matter. Secondly, based upon the role of legal counsel in the bankruptcy process, mere allegations as to the inaccurate advice of counsel will not suffice; corroborating evidence must be offered. But here this did not occur, with the Defendant only making vague statements as to how he was provided with improper advice. Thus, without the introduction of corroborating evidence,—for example, a document showing that the Defendant's legal counsel knew or should have known of the existence of his boat and Corvette—the Defendant's assertions relating to the inaccurate advice of legal counsel must be entirely discounted.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

---

**3.** *See Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882 (Bankr.N.D.Ill. 2003) (schedules and statements of financial affairs constitute statements under oath); *Bank of India v. Sapru*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991) (a fact is material if it may concern the discovery of assets).

**ORDERED** that, pursuant to 11 U.S.C. §§ 727(a)(2)/(4), the bankruptcy discharge of the Defendant/Debtor, Richard Newell, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that as against the Defendant, Carol Newell, this Complaint, be, and is hereby, DISMISSED.

It is **FURTHER ORDERED** that the Clerk, U.S. Bankruptcy Court, serve a notice of this Order upon the Debtor, Attorney for Debtor, the Trustee, and all of the Creditors and Parties in Interest.