**In re Thomas/Teresa WALTER, Debtors.**

**Louis Yoppolo, Trustee, Plaintiff,**

**v.**

**Thomas Walter, et al., Defendants.**

**No. 99–3209.**

United States Bankruptcy Court, N.D. Ohio.

March 1, 2001.

Louis J. Yoppolo, Toledo, OH, pro se.

Edward L. Snyder, Holland, OH, for defendants.

---

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

In the above captioned adversary complaint, the Plaintiff/Trustee (hereinafter referred to as the "Trustee") seeks to Revoke the Debtors' Bankruptcy Discharge. The statutory authority upon which the Trustee relies for his cause of action are Sections 727(d)(3) and 727(a)(6)(A) of the Bankruptcy Code which respectively provide that:

**11 U.S.C. § 727(d)(3)**

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(3) the debtor committed an act specified in subsection (a)(6) of this section.

**11 U.S.C. § 727(a)(6)(A)**

(a) The court shall grant the debtor a discharge, unless—

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

In the alternative, the Trustee also seeks to Revoke the Debtors' Bankruptcy Discharge pursuant to 11 U.S.C. § 727(d)(2) which states that:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]

Originally on this matter, the Trustee filed a Motion for Summary Judgment. The Court, however, denied this Motion on the basis that the Trustee had not sustained his requisite burden thereunder. Accordingly, on January 18, 2001, a Trial was held on the Plaintiff's Complaint to Revoke Discharge, at which time the Par-

ties were afforded the opportunity to present evidence in support of their respective positions. From this evidence, and after considering the entire record of this case, the Court finds that the following account of events constitute an accurate picture of the facts which are relevant to the Plaintiff's Complaint.

On October 13, 1998, the Debtors, who are husband and wife, petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their bankruptcy petition, the Debtors listed, among other assets, a 70% ownership interest in a business which operated under the name of T & R Lawn Care, Inc. The other owners of this business were Jonathan Walter and Ray Hall, each of whom maintained a 15% ownership interest in the Company. With regards to this business, Teresa Ann Walter testified that her husband, Thomas Walter, handled most of the financial affairs involving the business.

On December 9, 1998, the Trustee examined the Debtors at the first meeting of creditors held in accordance with 11 U.S.C. § 341(a). At this meeting, the Trustee discovered that the Debtors, and in particular the Debtor, Thomas Walter—who is the business manager for a local car dealership—was potentially due a significant amount of money in the form of certain tax refunds. Accordingly, on December 18, 1998, the Trustee filed a Motion for the Turnover of the nonexempt portion of the Debtors' tax refunds, with said Motion being subsequently granted by an Order entered by this Court on January 5, 1999. Following this, the Trustee, on September 9, 1999, in order to gain more information on the lawn care business operated by the Debtors, conducted a follow-up examination of the Debtors pursuant to Bankruptcy Rule 2004(a). At this examination, the Trustee discovered that there had recently been a sale of most of the assets of the Debtors' lawn care business. In this regard, and although there appears to be some discrepancy as to the exact amount of proceeds received as the result of the sale, it appears that the Debtors' lawn care business, as a corporate entity, received between Twenty Thousand Five Hundred dollars ($20,500.00) and Twenty-one Thousand Five Hundred dollars ($21,500.00) from the sale of its assets. Of this amount, Nine Thousand dollars ($9,000.00) was directly deposited into the Debtors' personal checking account; Ten Thousand dollars ($10,000.00) went into an account maintained by T & R Lawn Care, Inc.; while the remaining amount seems to have been taken by the Debtors in the form of cash. No money from this sale, however, was received by the other two shareholders of T & R Lawn Care, Inc.

With respect to the Nine Thousand dollars ($9,000.00) deposited into the Debtors' personal checking account, the evidence presented in this case revealed the following: First, the Nine Thousand dollars ($9,000.00) was given to the Debtors in return for certain shareholders loans the Debtors had, just prior to the filing of their bankruptcy petition, made to T & R Lawn Care, Inc. Second, the total amount of the Debtors' shareholder loans to T & R Lawn Care, Inc. was Twenty-two Thousand Five Hundred Seven dollars ($22,507.00). Third, despite the fact that the Debtors' loans to T & R Lawn Care, Inc. were in all likelihood estate property, and therefore subject to administration by the Trustee, the loans were not listed as an asset in the Debtors' bankruptcy petition. Fourth, the Nine Thousand dollars ($9,000.00) deposited into the Debtors' personal checking account occurred on September 8, 1999, one day before the Trustee conducted his examination of the Debtors in accordance with Bankruptcy Rule 2004(a). Fifth, the Trustee, after inquiring into the whereabouts of the funds, was

informed that of the Nine Thousand dollars ($9,000.00) originally received by the Debtors from T & R Lawn Care, Inc., only Six Thousand Five Hundred dollars ($6,500.00) was remaining, the other funds having been spent on personal matters.

After ascertaining the above information from the Debtors, the Trustee, after making upon both of the Debtors an oral demand for the surrender of the Nine Thousand dollars ($9,000.00) previously deposited into their personal checking account, filed with this Court, on September 9, 1999, a motion for the turnover of these moneys. In this Motion, the Trustee also sought, for the second time, an order requiring the Debtors to turnover the non-exempt portion of their tax refunds, the amount of which was previously revealed to the Trustee to be: Two Thousand Six Hundred Fifty-six dollars ($2,656.00) for federal taxes, and Forty-two dollars ($42.00) for state taxes. On September 29, 1999, the Court granted the Trustee's Motion and issued an Order, which was sent to the address listed in the Debtors' bankruptcy petition, stating that:

Upon motion of Louis Yoppolo, Trustee, for good cause shown, it is hereby

ORDERED that Debtors herein are hereby instructed to immediately and unconditionally turnover to the Trustee the following:

1. The total amount of Debtor's State and Federal tax refunds in the sum of $2,698.00;

2. The full amount of the moneys received by the Debtors of $9,000.00 from T & R Lawn Care Corporation as stockholder for either returns of shareholder loans to the Debtors or by dividends to the Debtors.

/s Chief Judge Richard L. Speer

Thus, in accordance with this Order, the Debtors were required to turnover to the Trustee Eleven Thousand Six Hundred Ninety-eight dollars ($11,698.00).

With respect to the above Order, the Debtor, Thomas Walter, acknowledged that he received a copy of the Order. In addition, the Trustee established at the Trial held on this matter that the Debtor, Thomas Walter, also understood the Order, and had for a period of time, sufficient funds available to satisfy the Order. In this regard, the evidence presented in this case clearly showed that, excluding the significant amount of cash the Debtors received from T & R Lawn Care, Inc., the Debtors' joint checking account, as of September 9, 1999–the day on which the Trustee filed his Motion for Turnover— had an account balance of Eleven Thousand Three Hundred Twenty-three and $^{66}/_{100}$ dollars ($11,323.66). In this respect, it was shown that during the period immediately following the Trustee's Motion for Turnover, the Debtors' dissipated their checking account by a significant amount of money. As for the Debtor, Teresa Ann Walter, the Trustee established that, although she did not actually see the Court's Order of Turnover, she was aware of the Trustee's oral demand for turnover. In addition, it was shown that the Debtor, Teresa Ann Walter, by being a named owner on the Debtors' checking account, had the authority, in her own right, to satisfy the Court's Order of Turnover. With respect to these matters, the Court, from its docket, also takes judicial notice of the fact that the Debtors did not appeal either of the Court's Orders for Turnover.

In response to this Court's Order for Turnover, the Debtors offered to pay to the Trustee the sum of Five Thousand dollars ($5,000.00) in settlement. This amount was then placed in escrow with the Debtors' attorney. The Trustee, however, as the result of the Debtors' noncompliance with this Court's Order of Turnover,

refused to accept the Debtors' settlement offer; and thereafter filed the instant complaint to revoke the Debtors' discharge.

## LEGAL ANALYSIS

 The bankruptcy discharge lies at the heart of the Bankruptcy Code's "fresh start" policy. *Lawson v. Hughes (In re Lawson)*, 193 B.R. 520, 523 (9th Cir. BAP 1996), *aff'd*, 122 F.3d 1237 (9th Cir.1997). As such, those provisions of the Bankruptcy Code which either deny or revoke a debtor's discharge are to be construed liberally in favor of the debtor and strictly against the party bringing the action. *Hunter v. Shoup (In re Shoup)*, 214 B.R. 166, 172 (Bankr.N.D.Ohio 1997). As one court poignantly stated: In determining whether to deny or revoke a debtor's bankruptcy discharge, "the bankruptcy court must balance the policy in favor of liberally applying the Bankruptcy Code to grant discharge to the honest debtor against the policy of denying relief to debtors who intentionally engage in dishonest practices and violate the Bankruptcy Code provision." *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 352 (Bankr. E.D.Mich.1999).

 In the present case, the Trustee, in support of his Complaint to Revoke the Debtors' bankruptcy discharge, relies primarily on the Debtors' failure to comply with this Court's Order of Turnover issued on September 29, 1999. In this respect, the Trustee cites to § 727(d)(3) and § 727(a)(6)(A) which, in conjunction with one another, provide that a debtor's bankruptcy discharge shall be revoked when the debtor "has refused ... to obey any lawful order of the court, other than an order to respond to a material question or to testify." In this respect, the word "refused," as used in § 727(a)(6)(A), must be distinguished from the word "failed" which is used elsewhere in § 727(a). *See* 11

U.S.C. § 727(a)(5). As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge. For purposes of § 727(a)(6)(A), a bankruptcy court, in determining whether a debtor has "refused" to obey a court order, is given a great deal of discretion. *See Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985) ("it is totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge."); *In re Weir*, 173 B.R. 682, 691 (Bankr.E.D.Cal. 1994) (even when a debtor disobeys a court order, a court should use discretion and consider whether a denial of discharge is appropriate under all the facts and circumstances of the case).

 In *Hunter v. Magack (In re Magack)*, 247 B.R. 406 (Bankr.N.D.Ohio 1999), this Court held that an action brought under § 727(a)(6)(A), for a debtor's refusal to obey a court order, is akin to a proceeding for civil contempt. As such, the party seeking to deny/revoke a debtor's discharge under 727(a)(6)(A) must, as is required in a federal civil contempt proceeding, establish that the following three elements are met by clear and convincing evidence:

(1) the alleged contemnor had knowledge of the order which he is said to have violated;

(2) the alleged contemnor did in fact violate the order; and

(3) the order violated must have been specific and definite.

*Id.* at 410 *citing Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.1998); *In re Temple*, 228 B.R. 896, 897 (Bankr.N.D.Ohio 1998).

 With regards to these elements, it is clear, and there does not seem to be any dispute among the Parties, that the

Trustee has, for both of the Debtors, established his burden with respect to elements two (2) and three (3). This conclusion is illustrated by these facts: First, an examination of the language of this Court's Order, as previously set forth above, undoubtedly shows that the terms of the Order were specific and definite. Second, with regards to the second requirement of the civil contempt test, neither of the Debtors has contested the fact that, as of the date of the Trial held on this matter, this Court's Order of Turnover had not been complied with; that is, the Debtors had not turned over to the Trustee the Eleven Thousand Six Hundred Ninety-eight dollars ($11,698.00) as was required in this Court's Order dated September 29, 1999. Accordingly, the Court now turns to examine whether the Trustee has met his burden with respect to the first prong of the civil contempt test. Before beginning with this analysis, however, one additional observation needs to be made: Impossibility, which is an affirmative defense to a charge of civil contempt, is not applicable for either of the Debtors under the particular facts of this case.[1] The reason for this is that the Debtors, in addition to having received a significant amount of cash from the sale of the assets held by T & R Lawn Care Inc., had in their joint checking account over Eleven Thousand dollars ($11,000.00) just prior to the time the Court issued its Order for Turnover (and just after the Trustee's Motion for Turnover was filed). In this respect, the Court observes that if the Debtors did not agree with this Court's decision, their proper avenue for recourse was to appeal the Order. *United States v. United Mine Workers of America,* 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) (stating that a court order "must be obeyed by the parties until it is reversed by orderly and proper proceedings"); *Matter of Providence Journal Co.,* 820 F.2d 1342, 1344 (1st Cir.1986) (the sine qua non of orderly government is that until modified or vacated, a court order must be obeyed).

Under the first prong of the civil contempt test, a moving party must establish that "the alleged contemnor had knowledge of the order which he is said to have violated." *Magack,* 247 B.R. at 410. With respect to the Trustee's burden being met thereunder, it was clearly shown in this case that the Debtor, Thomas Walter, upon receiving this Court's Order of Turnover, knew and understood all of the requirements contained therein. Thus, in accordance with this requirement, the failure of Thomas Walter to obey this Court's Order of Turnover would give rise to his liability for civil contempt, which in turn means that, for purposes of 11 U.S.C. § 727(a)(6)(A), Thomas Walter "refused" to obey a lawful order of this Court. Accordingly, the bankruptcy discharge originally granted to Thomas Walter will be revoked. On the other hand, the Debtor, Teresa Ann Walter, although aware of the Trustee's oral demand for turnover, has denied knowing the existence of this Court's order of Turnover; thus ostensibly negating any liability that she would have for civil contempt. In this respect, it appears that although the Order for Turnover was sent to the Debtors, Teresa Ann Walter's individual failure to have actual first-hand knowledge of the Order is the result of her leaving such matters in her husband's hands.

■■ For purposes of the first prong of the civil contempt test, actual knowledge of a court order is not an absolute prerequisite to hold a party liable for civil contempt. Instead, for purposes of a civil

---

1. For a complete discussion on the impossibility defenses to a charge of civil contempt see *Hunter v. Magack (In re Magack),* 247 B.R. 406 (Bankr.N.D.Ohio 1999).

contempt action, actual knowledge of a court order will be imputed to a party when that party had the opportunity to know of a court order, but simply chose not to gain actual knowledge of the order. *Utah State Credit Union v. Skinner (In re Skinner)*, 90 B.R. 470, 479 (D.Utah 1988) (a party may be found in contempt where the contemnor received notice, but until later did not actually read the contents of the order). Stated in another way, constructive knowledge, and not actual knowledge, of a court order is sufficient to hold a party liable for civil contempt. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000). Such a principle is absolutely necessary as our entire judicial system would become unworkable if any person wishing to ignore an order of a court could simply claim that, although they had the opportunity to see the order, they chose not to. From the perspective of a debtor in a bankruptcy case, this principle is especially equitable as the debtor voluntarily submitted themselves to the jurisdiction of the bankruptcy court, and as stated by this Court in a previous case involving the revocation of a debtor's discharge:

> [The debtors are the ones who] sought the protection of this Court, and by that action, they also must submit themselves to the rules of the Court. The Bankruptcy Code delineates the rights and duties of the trustees and debtors. Those rules were written for the express purpose of facilitating the complete and orderly administration of the Bankruptcy estates. If the parties do not comply with the rules, that purpose is frustrated.

*Hunter v. Ferris (In re Ferris)*, 30 B.R. 746, 748 (Bankr.N.D.Ohio 1983).

In this case, it is clear that the Trustee's Motion for Turnover, and this Court's subsequent Order for Turnover, were sent to the address listed on Mrs. Walter's bankruptcy petition. Furthermore, no evidence was introduced tending to show that the Debtor, Teresa Ann Walter, was somehow prevented, physically or otherwise, from seeing this Court's Order for Turnover; instead, it seems clear that Teresa Ann Walter simply chose to turn a blind eye to this Court's Order. Thus, with these facts in mind, the Court, after giving the matter serious consideration, finds that Teresa Ann Walter, having constructive knowledge of this Court's Order for Turnover, would be subject to contempt sanctions for her failure to obey this Court's Order of Turnover. Therefore, for purposes of 11 U.S.C. § 727(a)(6)(A), Teresa Ann Walter is found to have "refused" to obey a lawful order of this Court, and thus her bankruptcy discharge, like her husband's, will be revoked.

In addition to the Trustee's cause of action brought under § 727(d)(3) and § 727(a)(6)(A) of the Bankruptcy Code, the Trustee, in his Complaint against the Debtors, asserts that the discharge orders originally entered in favor of the Debtors should be revoked pursuant to 11 U.S.C. § 727(d)(2). In this case, given the severe nature of the remedy sought against the Debtors, the Court will address the merits of the Trustee's cause of action thereunder.

Under § 727(d)(2), a debtor's bankruptcy discharge will be revoked if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]" A reading of this section thus shows that a party moving to revoke a debtor's bankruptcy discharge must establish the existence of two elements: (1) the debtor acquired or became entitled to property of

the estate; and (2) the debtor knowingly and fraudulently failed to report or deliver this property to the trustee. In this case, only the second element is at issue, as the Debtors do not deny that upon the filing of their bankruptcy petition, the Trustee succeeded to their 70% interest in T & R Lawn Care, Inc.; thus giving the Trustee a commensurate interest in the assets subsequently sold by T & R Lawn Care, Inc.

▬▬▬ As used in § 727(d)(2), the phrase "knowingly and fraudulently" requires that the debtor's actions must have been taken with the knowing intent to defraud the trustee, or be so reckless so as to justify a finding that the debtor acted fraudulently. *Werner v. Puente (In re Puente)*, 49 B.R. 966, 969 (Bankr.W.D.N.Y. 1985). In making such a determination, a debtor's fraudulent intent may be inferred from all of the surrounding circumstances or from the debtor's course of conduct. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). With regards to this standard, the following facts presented in this case are relevant:

The Debtors made a loan of Twenty-two Thousand Five Hundred Seven dollars ($22,507.00) to T & R Lawn Care, Inc. shortly before they petitioned this Court for bankruptcy relief. The Debtors then failed to disclose this loan in their bankruptcy petition;

the majority of the assets of T & R Lawn Care, Inc. were sold shortly before the Trustee was to examine the Debtors in accordance with Bankruptcy Rule 2004(a);

one day before the Trustee filed his Motion for Turnover, the Debtors deposited Nine Thousand dollars ($9,000.00) into their joint checking account;

the Debtors took a significant portion of the funds T & R Lawn Care, Inc. received as the result of the sale of its assets, and then either deposited such funds in their personal checking account, or took the funds in cash. The Debtors then dissipated, in a relatively short period of time, a significant portion of these funds. In addition, the dissipation of these funds, in large part, occurred while the Trustee had a Motion for Turnover pending with this Court;

the Debtors have never complied with the two Orders for Turnover issued by this Court.

Taking these facts all together, it is the conclusion of this Court that the Trustee has established a prima facie showing that the Debtors both knowingly and fraudulently failed to deliver estate property to the Trustee. Of utmost importance in this conclusion is the timing of events. In particular, the lending of money to T & R Lawn Care, Inc. shortly before the Debtors filed for bankruptcy, coupled not too long thereafter with the postpetition return of this money, is to say the least, highly indicative of a scheme to defraud the Trustee. This is especially true considering that the Debtors' loan to T & R Lawn Care, Inc. was repaid to the Debtors around the same time the Trustee was seriously investigating the financial affairs of both the Debtors and their Corporation. Closely related to this concern is the Debtors' failure to list as an asset in their bankruptcy petition their loans to T & R Lawn Care Inc., an act, which by itself, is consistent with an intent to defraud the Trustee. In this respect, mere oversight on the part of the Debtors must be discounted as the loans made to T & R Lawn Care, Inc. totaled Twenty-two Thousand Five Hundred Seven dollars ($22,507.00).

To rebut the Trustee's prima facie case of fraud, the Debtors argue that they, and in particular the Debtor, Thomas Walter, performed services for the Corporation after their bankruptcy petition was filed, and thus they are entitled to be compensated

for this work. Hence, to state it differently, the Debtors contend that any allegations of fraud should be discounted, because the money that they received from the Corporation was simply compensation for the postpetition services that they performed for the Corporation's benefit.

This Court strongly believes in the principle of quantum meruit. *Tonwe v. Harris–Miles (In re Harris–Miles)*, 187 B.R. 178, 181 (Bankr.N.D.Ohio 1995); *In re M–H Group, Inc.*, 139 B.R. 836, 841 (Bankr. N.D.Ohio 1991). The difficulty, however, the Court has with the Debtors' argument is two-fold: First, with respect to the postpetition services the Debtors rendered to the Corporation, the Debtors neither contacted the Trustee, nor sought the permission of this Court.[2] In fact, just the opposite is true, as the evidence presented in this case shows that the Debtors actually tried to keep their activities vis-a-vis the Corporation secret. Similarly, the Debtors, instead of cooperating with the Trustee, seem to have actually impeded the Trustee in his efforts to investigate their financial affairs, a clear violation of their duties as debtors.[3] Second, and more importantly, the postpetition services a debtor/shareholder renders on behalf of a corporation do not abrogate a debtor's duty to deliver to the trustee, as estate property, any interest the debtor holds in a corporation. In this regard, it is the Trustee, and not the debtor, who determines the appropriate manner in which such an asset is to be disposed of. Thus, given these considerations, the Court cannot find that the Debtors have been able to successfully rebut the Trustee's prima facie case for fraud under 11 U.S.C. § 727(d)(2). Accordingly, the Court finds that both of the

Debtors should have their bankruptcy discharges revoked pursuant to 11 U.S.C. § 727(d)(2).

In summary, the Court finds that the Trustee has sustained his burden under both 11 U.S.C. § 727(a)(6)(A) and 11 U.S.C. § 727(d)(2). Accordingly, the discharge orders originally entered by this Court in favor of the Debtors, Thomas Walter and Teresa Ann Walter, will be Revoked. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the bankruptcy discharge of the Defendant, Thomas Walter, be, and is hereby, REVOKED pursuant to 11 U.S.C. § 727(d)(3), 11 U.S.C. § 727(a)(6)(A), and 11 U.S.C. § 727(d)(2).

It is **FURTHER ORDERED** that the bankruptcy discharge of the Defendant, Teresa Ann Walter, be, and is hereby, REVOKED pursuant to 11 U.S.C. § 727(d)(3), 11 U.S.C. § 727(a)(6)(A), and 11 U.S.C. § 727(d)(2).

It is **FURTHER ORDERED** that the Clerk, U.S. Bankruptcy Court, serve a notice of this Order upon the Debtors, Attorney for the Debtors, the Trustee, and all the Creditors and Parties in interest.

---

2. In this regard see 11 U.S.C. § 327 and 11 U.S.C. § 330.

3. See for example, 11 U.S.C. § 521(3) which states that, "[t]he debtor shall—if a trustee is

serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title."