**In re Jose M. RIVERA, Sr., Debtor.**

**Marvin A. Sicherman, Trustee in Bankruptcy, Plaintiff,**

v.

**Jose M. Rivera, Sr., Defendant.**

**Bankruptcy No. 03–10798.**
**Adversary No. 05–1231.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 13, 2006.

James B Kerner, Avon Lake, OH, Jonathan E. Rosenbaum, Elyria, OH, Stephen D. Hobt, Cleveland, OH, for Defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Chief Judge.

Before the Court for resolution are cross-motions for summary judgment filed by the Debtor Jose M. Rivera (the "Debtor") and by Marvin A. Sicherman, the Chapter 7 Trustee (the "Trustee"), respectively.

The Court acquires core matter jurisdiction over this proceeding under 28 U.S.C. § 157(b)(2) and General Order No. 84 of this District. Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a hearing on the matter, the following findings of fact and conclusions of law are hereby rendered:

*

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 22, 2003. His bankruptcy counsel was James B. Kerner ("Kerner"). The Debtor was granted a discharge on April 28, 2003.

At the time of filing, the Debtor had a pending personal injury claim against the Catholic Diocese of Cleveland (the "Personal Injury Claim"). The Debtor's counsel for the Personal Injury Claim was William M. Crosby ("Crosby"). The Personal Injury Claim was scheduled by the Debtor in an amount listed as "Unknown." The Trustee held a § 341 meeting on March 10, 2003, at which time the Debtor acknowledged that the claim against the Diocese belonged to the Trustee.[1] The transcript reflects that the Debtor was represented by "Mr. (UNIDENTIFIED), ESQ. For the Debtor."[2] Post-petition, on

Jose M. Rivera, Sr., pro se.

James B. Kerner, Avon Lake, OH, for Debtor.

Lisa A. Vardzel, Dettelbach, Sicherman & Baumgart, Cleveland, OH, for Plaintiff.

---

1. Transcript of the § 341 Meeting on March 10, 2003 ("341 Transcript"), at 6.

2. *Id.* The record does not reflect the identity of the attorney representing the Debtor at the

June 19, 2003, the Personal Injury Claim was settled for an amount of $175,000.

On July 11, 2003, the Trustee sent a letter to Crosby (and his co-counsel), informing him of the belief that any proceeds of the Personal Injury Claim would be assets of the estate, and inquired about the status of the case. On July 22, 2003, the Trustee received a fax from Kerner, which stated that the Personal Injury Claim "has apparently been settled for $175,000.00." On February 14, 2004, the Trustee sent another letter to Crosby, asking for a report of the settlement amount paid to the Debtor. On February 25, 2004, Crosby responded that he would seek the Debtor's permission to disclose the amount paid to him. On March 2, 2004, Crosby reported that the Debtor had received $15,000 from the settlement.

On June 8, 2004, the Debtor received an additional $80,000 from Crosby's IOLTA account.[3] The Debtor's affidavit reveals that he received conflicting advice on whether it was necessary to turnover the $80,000 proceeds to the Trustee. The Debtor further indicated that the $80,000 was not released to him until his attorneys had determined that the amount was owed to the Trustee as property of the estate.

On October 15, 2004, the Trustee reported to Crosby that the $15,000 had been recovered, and sought further settlement disbursement records. Crosby failed to respond, or to appear and/or provide documents pursuant to a subpoena and Rule 2004 Order.[4] On January 6, 2005, the Debtor's new counsel, Jonathan E. Rosenbaum ("Rosenbaum"), sent a letter to the Trustee, noting that Crosby had not pro-

vided him with the Debtor's files, and that Crosby had told the Debtor that he could spend the $80,000.

On March 15, 2005, this Court entered an order authorizing examination of the Debtor under Rule 2004 of the Federal Rules of Bankruptcy Procedure. On April 20, 2005, the Trustee sent a letter to the Debtor notifying him that the 2004 examination would be held on May 5, 2005, and requesting certain documentation. The Debtor failed to appear at the 2004 examination or otherwise comply with the Court's order. The Debtor testifies that he did not appear because of an emergency carotid artery surgery on April 27, 2005.

On May 9, 2005, the Trustee filed the above captioned adversary proceeding, alleging that the Court should revoke and deny the Debtor's discharge, on the grounds that the Debtor 1) obtained his discharge through fraud by representing that he received only $15,000, as opposed to $95,000, from the Personal Injury Claim; 2) fraudulently failed to surrender the $80,000 proceeds to the Trustee, despite knowing that they were property of the estate; and 3) refused to obey an order of the Court to appear at the 2004 examination scheduled on May 5, 2005.

The Debtor responds that the Trustee was made aware of the existence of the settlement proceeds by a fax message from Kerner, and therefore the Debtor could not have concealed the property. Consequently, the Trustee could not have relied upon any alleged concealment. Second, the Debtor asserts that he acted in

§ 341 meeting. Kerner was the Debtor's bankruptcy counsel of record at the time.

**3.** These funds have apparently been dissipated, and are the subject of related adversary proceedings filed by the Trustee against the alleged recipients.

**4.** Crosby's actions are the subject of a separate contempt motion pending before the Court.

good faith, and upon the advice of his counsel, negating the requirement of fraudulent intent. Alternatively, the Debtor believes that the Trustee, by waiting for a year after the disclosure from Kerner, is now time barred by the doctrine of laches from seeking to collect the additional $80,000. Finally, the Debtor argues that his failure to appear at the 2004 examination was excusable, and his discharge should not be denied on that basis.

**\*\***

Summary judgment is appropriate if a review of the record, in a light most favorable to the non-moving party, demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see generally Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Leadbetter v. Gilley*, 385 F.3d 683, 689–90 (6th Cir.2004). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether the [trier of fact] could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Once the moving party has met this initial burden of proof, the non-moving party must present specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the mo-

tion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Pavlovich v. National City Bank*, 342 F.Supp.2d 718, 722–723 (N.D.Ohio 2004) (citing *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992)). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990).

When the Court evaluates cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506–07 (6th Cir.2003).

\*\*\*

■ The Trustee seeks to revoke the Debtor's discharge pursuant to 11 U.S.C. §§ 727(d)(1), (d)(2), and/or (d)(3), and to deny the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) and/or (a)(6). "The party seeking revocation bears the burden of proof by a preponderance of the evidence. Revocation of a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally construed in favor of the debtor and strictly construed against the party seeking revocation." *E.g., In re Stedham*, 327 B.R. 889, 897 (Bankr. W.D.Tenn.2005) (citing *Buckeye Retirement Co v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr.E.D.Tenn.2003)); *In re Sayre*, 321 B.R. 424, 429 (Bankr.N.D.Ohio 2004) ("[A] debtor's discharge may only be denied or revoked for those reasons clearly expressed by statute, with all the statutory exceptions to discharge construed liberally in favor of the debtor and strictly against the party bringing the action."). The Trustee also carries "the burden of proof to establish, by at least a preponderance of the evidence, that all the elements of the applicable provision denying the debtor's discharge are met." *In re Newell*, 321 B.R. 885, 888 (Bankr.N.D.Ohio 2005); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir.2000) ("The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge.").

Therefore, the Court must determine whether either party has shown that there exists no genuine issue of material fact as to whether the Debtor's discharge should be denied and/or revoked.

### 1. *Debtor obtained discharge through fraud*

■ The Trustee argues that the Debtor's discharge should be revoked because it was obtained by fraud. Section 727(d)(1) states:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge

11 U.S.C. § 727(d)(1). "Pursuant to its plain language, a party bringing an action to revoke a debtor's discharge under this paragraph [§ 727(d)(1)] must establish the existence of two elements: (1) the debtor obtained their discharge by fraud; and (2) that moving party did not know of the fraud before the discharge." *In re Sayre*, 321 B.R. 424, 427 (Bankr.N.D.Ohio 2004); *In re Stedham*, 327 B.R. at 898.

■ The Trustee has not met his burden of showing that the Debtor obtained a discharge through fraud. In this case, the Debtor received a discharge on April 28, 2003. The settlement was reached on June 19, 2003. There is no evidence to suggest that the Debtor, prior to receiving a discharge, had any knowledge of the settlement value, or that any fraud existed prior to discharge. Accordingly, summary judgment is hereby rendered in favor of the Defendant/Debtor upon the allegations that the Debtors' discharge should be revoked pursuant to § 727(d)(1).

### 2. *Debtor failed to report proceeds from Personal Injury Claim*

The Trustee also argues that the Debtor's discharge should be revoked and denied pursuant to §§ 727(d)(2) and (a)(2)(B), since he failed to report to the Trustee that he had received an additional $80,000 as proceeds of the Personal Injury Claim.

### a. Revocation of discharge under § 727(d)(2)

■ Section 727(d)(2) provides:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. § 727(d)(2). "Under § 727(d)(2), a debtor's bankruptcy discharge will be revoked if the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee [.] A reading of this section thus shows that a party moving to revoke a debtor's bankruptcy discharge must establish the existence of two elements: (1) the debtor acquired or became entitled to property of the estate; and (2) the debtor knowingly and fraudulently failed to report or deliver this property to the trustee." *In re Walter*, 265 B.R. 753, 760–61 (Bankr. N.D.Ohio 2001); *In re Bowman*, 173 B.R. 922, 925 (9th Cir. BAP 1994).

■ The parties do not dispute that the $80,000 received by the Debtor from the Personal Injury claim was property of the estate. Therefore, the Court must determine whether the Debtor knowingly and fraudulently failed to report or deliver this property to the Trustee. "The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied." *Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir.1992) (citations omitted); *In re Clarke*, 332 B.R. 865, 872 (Bankr.C.D.Ill.2005); *In re Helsel, Sr.*, 326 B.R. 591, 600 (Bankr.W.D.Pa. 2005); *In re Colish*, 289 B.R. 523, 541 (Bankr.E.D.N.Y.2002); *In re Walter*, 265 B.R. at 761; *In re Hanson*, 1984 WL 558333, *4 (Bankr.D.N.D.1984) ("The element of a knowing and fraudulent failure to report the acquisition of property requires proof of actions which illustrate a knowing intent to defraud the trustee or a reckless disregard of his interests."). In determining whether the Debtor acted knowingly and fraudulently, the court considers the totality of the circumstances. *Matter of Yonikus*, 974 F.2d at 905–06 ("The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct.... Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances."); *In re Helsel, Sr.*, 326 B.R. at 600 (Bankr.W.D.Pa.2005) ("A finding of fraud may be inferred from a course of conduct or from surrounding circumstances.").

■ The Trustee argues that the Debtor knew that the $80,000 from the Personal Injury Claim was property of the estate and fraudulently failed to deliver or report the amount to the Trustee. At the § 341

meeting, the Debtor acknowledged that any recovery from the Personal Injury Claim belonged to the Trustee. The Trustee's question, and the Debtor's answer, were as follows:

Q Now did your lawyer advise you that the claim against the Diocese is going to belong to me, not you?

A Yes.[5]

Notwithstanding, the Debtor argues that he relied in good faith upon his counsel's advice, and therefore did not have the requisite fraudulent intent. The Debtor also states in his affidavit that he received the $80,000 on June 8, 2004 only after his attorneys had resolved the issue of whether the money had to be turned over to the Trustee.[6] The Debtor asserts that both he and his bankruptcy attorney (Kerner) believed that the $15,000 that was initially turned over to the Trustee was a negotiated amount of the entire amount that was to be turned over to the Trustee.[7]

The Debtor's testimony, however, is inconsistent with e-mails that he sent in August and September 2004. On August 17, 2004, the Debtor sent an e-mail to Crosby, stating that Kerner had informed him that the full amount of the Personal Injury Claim should be turned over to the Trustee. On August 18, 2004, Crosby sent an e-mail to the Debtor stating, "Don't be afraid, Kerner is an idiot." The Debtor's e-mail on September 2, 2004 states that "I received a letter from the Trustee and Attorney Kerner ... The Trustee seems to be pressuring Mr. Kerner." The Debtor also testified that,

A. Well, Kerner said that I had needed to turn the money in. And then Crosby said I didn't need to. And I needed to let you know what was going on. I wanted to know what was going on. . . . [8]

It is clear that, at this time, the Debtor was aware that Kerner and the Trustee believed that the settlement proceeds were property of the estate.

Further, the Debtor originally scheduled the Personal Injury Claim as property of the estate. The Debtor also acknowledges that "Had the Trustee contacted me or my bankruptcy attorney, I would have immediately surrendered the entire amount to him."[9] The fact that the Debtor would have voluntarily turned over the $80,000 further undercuts the Debtor's assertion that he believed that he had satisfied all amounts owed to the Trustee.

 The Debtor's reliance on Crosby's advice does not excuse him from acting knowingly and fraudulently. The Debtor may rely on the advice of counsel, however, such reliance is a defense to fraud only to the extent that it is reasonable. *In re Colish*, 289 B.R. 523, 542 (Bankr.E.D.N.Y. 2002) (citations omitted) ("It is well established that the advice of counsel is a complete defense to a charge of fraud where a full and fair disclosure of the facts is made. However, the reliance must be in good faith and any protection based on reliance on debtor's counsel will only act as a protection to the extent the reliance was reasonable."). The Debtor acknowledged that:

---

5. Transcript of 341 Hearing, at 5–6.

6. Debtor's Affidavit on January 7, 2006 at ¶ 6 ("Debtor's January 7 Affidavit"), Exhibit 1 to Debtor's Brief in Opposition to Plaintiff's Motion for Summary Judgment.

7. Debtor's January 7 Affidavit ¶ 8.

8. Debtor's Deposition, Attachment to Trustee's Cross Motion for Summary Judgment, at 46.

9. Debtor's January 7 Affidavit, at ¶ 7.

Q. So you would rely on Mr. Kerner for bankruptcy, you would rely on Mr. Crosby for the Catholic litigation, correct?

A. Okay. Yes.[10]

The fact that the Debtor conveniently chose to rely solely on the bankruptcy advice of Crosby, in direct contradiction to his own testimony at the § 341 meeting and the advice of his own bankruptcy counsel, is neither reasonable nor credible.

The only evidence offered by the Defendant is his own affidavit, stating that he believed in good faith that he could spend the $80,000. This testimony, however, is contradicted by his earlier sworn testimony at the § 341 meeting, and is unsupported by any other evidence. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."); *Joostberns v. United Parcel Services, Inc.,* 2006 WL 41189, *7 (6th Cir.2006) (citing *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 459–60 (6th Cir.1985)) ("a non-moving party should not be able to create non-existent issues of fact by filing affidavits after the opposing party files for summary judgment."); *United States ex rel. Compton v. Midwest Specialties, Inc.,* 142 F.3d 296, 303 (6th Cir.1998) ("[A] party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony."). The Debtor has not provided evidence from which this Court may reasonably infer that he did not know that the settlement proceeds were property of the estate, or that

they were to be turned over to the Trustee.

■ Therefore, the Trustee has met his burden of showing that there exists no genuine issue of material fact on this particular issue. Although summary judgment is generally inappropriate when intent is at issue, summary judgment may be granted where all reasonable inferences defeat the claims of one side. *See Hoover v. Radabaugh,* 307 F.3d 460, 467 (6th Cir. 2002) ("When the defendants' intent is at issue, summary judgment is particularly inappropriate."); *In re Davison,* 2004 WL 2852352, *4 (10th Cir. BAP 2004) ("Although the Debtors are correct that summary judgment is inappropriate when a choice must be made between two competing inferences, the Debtors did not show that there was any other inference to be drawn from the facts in evidence."); *In re Gertsch,* 237 B.R. 160, 165 (9th Cir. BAP 1999) (citations omitted) ("Where intent is at issue, summary judgment is seldom granted, however, summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue."); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

The Debtor argues, alternatively, that the Trustee's complaint is barred by the statute of limitations, or, alternatively, by laches. Section 727(e) limits the time that the Trustee may bring an action under § 727(d)(2), stating:

**10.** *Id.* at 62.

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

(1) under subsection (d)(1) of this section within one year after such discharge is granted; or

(2) under subsection (d)(2) or (d)(3) of this section before the later of—

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

11 U.S.C. § 727(e). A review of the Court's docket reflects that the Debtor's case has not been closed. Therefore, § 727(e) does not bar the Trustee's complaint.

■■■■■ As the party defendant, the Debtor bears the burden of showing that the equitable doctrine of laches should bar the Trustee's complaint. *See, e.g., In re Procaccianti,* 253 B.R. 590, 591 (Bankr. D.R.I.2000); *In re Taubman,* 160 B.R. 964, 990 (Bankr.S.D.Ohio 1993). "The defense of laches requires an inexcusably long delay in commencing the action which causes prejudice to the other party. However, mere delay is insufficient to establish the laches defense .... the Sixth Circuit uses a strong presumption that laches will not apply when the analogous statute of limitations has not run, absent compelling reason." *Patton v. Bearden,* 8 F.3d 343, 347–48 (6th Cir.1993) (citations omitted). The Debtor has not shown that any prejudice has resulted to the Debtor. *In re Caledonia Coal Co.,* 254 F. 742, 745 (E.D.Mich. 1918) ("Delay alone does not constitute laches; the essential element being prejudice to another person by reason of the delay complained of."). The doctrine of laches is not applicable, as the Trustee clearly made numerous, and vigorous attempts to determine the total amount that the Debtor received, and to contact Kerner and the Debtor, as noted in the Debtor's email. The Trustee could not have taken

actions to recover funds from the Debtor until he was informed of the amounts that had actually been dispersed to the Debtor.

In view of the foregoing findings, it is hereby determined that the Debtor knowingly and fraudulently failed to report or deliver property of the estate to the Trustee. Therefore, his discharge is hereby revoked pursuant to § 727(d)(2).

### b. Deny discharge under § 727(a)(2)(B)

■■■■■ The Trustee also seeks to deny the Debtors discharge pursuant to § 727(a)(2)(B), which provides:

a) The court shall grant the debtor a discharge, unless—...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(B). "To establish a claim for denial of discharge under § 727(a)(2)(B), the Trustee must prove that the Debtor (1) transferred, removed, destroyed, mutilated, or concealed property of her bankruptcy estate, (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate, (3) after the Petition Date." *In re West,* 328 B.R. 736, 752 (Bankr.S.D.Ohio 2004). "The intent of Section 727(a)(2)(B) is to deny discharge to a debtor who fails to disclose transactions regarding his assets subsequent to filing his petition in bankruptcy." *In re Caserta,* 182 B.R. 599, 606 (Bankr.S.D.Fla.1995).

■■■■ The Debtor admits that he spent the balance of the settlement proceeds, and therefore transferred property of the

bankruptcy estate.[11] As determined above, the Debtor transferred property of the estate, with the knowledge that such property should have been turned over to the Trustee. Such actions also evidence an actual intent to hinder, delay, or defraud the Trustee. *In re Searles,* 317 B.R. 368, 379 (9th Cir. BAP 2004) ("Whether a debtor harbors 'intent' to hinder, or to delay, or to defraud the trustee or a creditor is a question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances.... The discharge was denied because the community property was not handed over to the trustee. Instead, the appellant engaged in prolonged warfare with the trustee resisting surrender of property that was unambiguously property of the estate."); *In re Heil,* 289 B.R. 897, 908 (Bankr.E.D.Tenn.2003) (citing *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (6th Cir. BAP 1999)) ("debtor's knowledge that a statement is false can be evidenced by a demonstration that the debtor 'knew the truth, but nonetheless failed to give the information or gave contradictory information.' ").

Accordingly, the Debtor's discharge is denied pursuant to § 727(a)(2)(B).

### 3. *Debtor failed to appear at 2004 exam*

 Third, the Trustee argues that the Court should revoke and deny Debtor's discharge pursuant to §§ 727(a)(6)(A) and (d)(3) because the Debtor did not appear at the scheduled 2004 examination or otherwise comply with the Court's order. Section 727(d)(3) provides:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(3) the debtor committed an act specified in subsection (a)(6) of this section; or

11 U.S.C. § 727(d)(3). Section 727(a)(6), in turn, provides:

a) The court shall grant the debtor a discharge, unless—...

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

"Section 727(a)(6) provides a basis for denial of the discharge if the debtor has refused in the case to obey any lawful order of the court. The denial of discharge under this section is subject to the discretion of the court. [T]he word 'refused,' as used in § 727(a)(6)(A), must be distinguished from the word 'failed' which is used elsewhere in § 727(a). As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge." *In re Patrick,* 290 B.R. 306, 313 (Bankr.E.D.Mich.2003) (citations omitted). The Debtor cannot claim inadvertence or mistake, however, "if the evidence establishes that the debtor knew or should have known of the multitude of orders and notices sent to her and disregarded them." *In re Barman,* 237 B.R. 342, 349 (Bankr.E.D.Mich.1999).

 The Court ordered the Debtor to appear, testify, and to bring certain documents to the 2004 examination. The Debtor does not dispute that he was provided notice of the 2004 examination, and that he failed to respond or to otherwise comply. Despite the fact that a 2004 exam includes an order to testify, such complete failure may be grounds for revoking and denying discharge. *See In re Rodwell,* 280 B.R.

---

**11.** Debtor's Affidavit on December 1, 2005 at ¶ 9 ("Debtor's December 1 Affidavit"), Debt-

or's Motion for Summary Judgment; Debtor's Deposition, at 41.

**330**

100, 103 (Bankr.D.N.J., 2002) (If the debtor fails to comply with the Rule 2004 order, the trustee may request the debtor's arrest, see Fᴇᴅ.R.Bᴀɴᴋʀ.P. 2005, or, at that point, bring an adversary complaint to revoke her discharge pursuant to 11 U.S.C. § 727(d)(3)).

The Debtor makes the unsubstantiated assertion that he relied upon one of his bankruptcy counsel's false representations that he would obtain a continuance due to the Debtor's surgery. The record does not reflect whether the Debtor made any further inquiry of his counsel, even after receiving notice on April 20, 2005 that he was expected to appear at the 2004 examination to testify and to produce certain documentation. Further, the Debtor's medical records show that he was released from the hospital on April 27, 2005, one day after being admitted. Nothing in his discharge instructions indicates that he was unable to testify on the noticed May 5, 2005 date. Although the Trustee stated that surgery may generally be grounds for an adjournment, no request was made by the Debtor or on his behalf.

Although the record supports the Trustee's assertion that the Debtor refused to comply with an order of this Court, such a finding is unnecessary at this time. As determined above, the Debtor's discharge is revoked and denied pursuant to §§ 727(d)(2) and (a)(2)(B).

\* \* \* \* \* \*

Accordingly, the Trustee's motion for summary judgment is well premised and is hereby granted in part, as determined herein. The Debtor's motion for summary judgment is not well premised and is hereby denied. Each party is to bear its respective costs.

**IT IS SO ORDERED.**